# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ERIK BARCLAY,

      Plaintiff,

    v.

STABLEY, *et al.*,

      Defendants.

No. 4:19-CV-02054

(Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 9, 2021

Plaintiff Erik Barclay, a state prisoner presently confined at the State Correctional Institution at Greene in Waynesburg, Pennsylvania, filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging an excessive force in violation of the Eighth Amendment while he was incarcerated at the State Correctional Institution at Rockview in Bellefonte, Pennsylvania, against Defendants Stabley, McCurdy, McHenry, Lee, Kaurt, Phillips, Ortiz, and Rogers.[1]  Presently before the Court is Defendants' partial motion to dismiss the amended complaint, or, in the alternative, for summary judgment,[2] which is ripe for adjudication.  For the reasons that follow, the Court will deny the partial motion to dismiss.

---

[1]  Doc. 13.
[2]  Doc. 14.

## I.    FACTUAL BACKGROUND

In the amended complaint, Plaintiff alleges that May 17, 2017, Defendants Stabley and McCurdy entered Plaintiff's cell at SCI Rockview.[3]  Defendant Stabley grabbed Plaintiff's arm, grabbed him by the neck, body slammed him onto the concrete floor, and then called for backup.[4]  While Plaintiff was restrained on the floor, Defendant McCurdy began punching and kicking Plaintiff in the back, neck, elbows, and legs areas of his body.[5]  At some point, Plaintiff was handcuffed and remained on the ground.  Defendants McHenry, Lee, and Kauert then entered his cell, and they placed their feet on his neck and ankle, and then began punching him.[6]  Defendant McHenry then kicked Plaintiff's right elbow "super hard."[7]  Plaintiff also alleges that Defendant Rogers participated in the assault.[8]

Plaintiff was escorted to the infirmary by Defendants Phillips and Ortiz, who, while Plaintiff was handcuffed, forcibly twisted his arms and shoulders upward to purposefully cause injury and inflict pain on him.[9]  The infirmary staff noted bruising, swelling, cuts, scrapes, and bleeding.[10]  Since then, Plaintiff has suffered

---

[3]    Doc. 13 at 3.
[4]    *Id.*
[5]    *Id.*
[6]    *Id.* at 3-4.
[7]    *Id.* at 4.
[8]    *Id.*
[9]    *Id.*
[10]    *Id.*

ongoing damage to his neck and back from the injuries he incurred.[11]  After Plaintiff

was released from the infirmary, he was placed in solitary confinement.[12]

Plaintiff attaches to his amended complaint the prison grievances he filed to

exhaust his administrative remedies.[13]  In his initial grievance dated June 23, 2017,

Plaintiff explains that he has requested an inmate grievance form every day while in

solitary confinement, but his request has been "continuously denied, not one c/o on

the 1st or 2nd shift will give me one grievance."[14]  He goes on to explain that he

wrote a request to the superintendent requesting that someone send him a grievance:

> because DBlock CO's continue to deny me one intentionally and
> maliciously impeding the grievance process; its not a coincidence that
> the CO's work on the same block as where the situation I am grieving
> happened to me—They know what I am trying to grieve.  The unit
> manager Kutin wrote back misleading me by telling me to just keep
> asking—knowing what the c/os are doing when they could of easily
> sent me one.  I took his direction, naively, until I was forced to get this
> grievance from a neighboring cell by pulling it in my cell with a
> makeshift paper broom made from notebook paper, once it was thrown
> over the tier.[15]

In the initial grievance, Plaintiff details the alleged force used against him,

naming Defendants Stabley, McCurdy, and Rogers.  His version of events is

consistent in both the grievance and as later stated in the allegations of his amended

---

[11]  *Id.*
[12]  *Id.*
[13]  *Id.* at 10-18.
[14]  *Id.* at 10.
[15]  *Id.  See also id.* at 18 (inmate request to the superintendent).

complaint, except that he does not identify by name some of the actors.  For example,

after Plaintiff is on the ground, Plaintiff states in the grievance that

> as c/os [illegible and cut off] the cell all I feel is a barrage of knuckles
> & boots, punching & kicking my back, legs, neck & elbow, as I'm face
> first laying on the floor completely restrained.  I feel two heavy men
> (guards) standing on my neck & ankle with all their weight . . . .  Along
> the way 2 different c/os including CO Rogers are applying pressure
> points to my rotator cuff.[16]

Plaintiff also requested the names of all of the corrections officers involved in the

grievance.[17]

Plaintiff's grievance was denied, and he filed the appropriate appeals through

all levels of review.  In his final appeal, Plaintiff references Defendant McHenry by

name.[18]

## II.   STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must

set forth a claim for relief which contains a short and plain statement of the claim

showing that the pleader is entitled to relief; the complaint must provide the

defendant with fair notice of the claim.[19]  When considering a Rule 12(b)(6) motion

to dismiss, the court must accept as true all factual allegations.[20]  The issue in a

---

[16]   *Id.* at 11.
[17]   *Id.*
[18]   *Id.* at 16.
[19]   *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[20]   *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).

motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[21]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22]  The court need not accept unsupported inferences,[23] nor legal conclusions cast as factual allegations.[24]  Legal conclusions without factual support are not entitled to the assumption of truth.[25]

Once a court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible.  This is a context-specific task, for which the court should be guided by its judicial experience.  The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[26]  A "claim has facial plausibility when the plaintiff pleads

---

[21]  *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[22]  *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).

[23]  *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

[24]  *Twombly*, 550 U.S. at 556.

[25]  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

[26]  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[27]  The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[28]

## III.   DISCUSSION

Defendants argue, *inter alia*, that Plaintiff has failed to exhaust his administrative remedies as to certain Defendants, which then bars his claim brought pursuant to § 1983 as a matter of law as against those Defendants.  Specifically, Defendants conceded that Plaintiff has exhausted his administrative remedies against Defendants Stabley, McCurdy, and Rogers, but argue that he has failed to do so against Defendants McHenry, Lee, Kauert, Phillips, and Ortiz (the "Moving Defendants"), as they were not mentioned by name in the initial grievance.

Section 1997e(a) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion is a mandatory prerequisite to any prisoner's filing of a civil rights action regarding prison conditions,[29] and a "'threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right

---

[27]  *Iqbal*, 556 U.S. at 678.
[28]  *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).
[29]  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001))

time.'"[30]   "[T]he . . . exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[31]   A prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process, as long as the grievance tribunal has authority to take some responsive action.[32]

The applicable procedural rules for properly exhausting administrative remedies "are defined not by [§ 1997e(a)], but by the prison grievance process itself. Compliance with prison grievance procedures, therefore, is all that is required by [§ 1997e(a)] to 'properly exhaust.'"[33]   The burden of proving non-exhaustion lies with the defendants asserting the defense.[34]   A court evaluating the "threshold" issue of exhaustion looks at whether the inmate "compli[ed] with the prison's specific grievance procedures" and whether those procedures were available to the inmate.[35]

In Pennsylvania, the Department of Corrections ("DOC") has established a comprehensive administrative grievance procedure, DC-ADM 804.[36]   Under that

---

[30]   *Small v. Camden County*, 728 F.3d 265, 270 (3d Cir. 2013).

[31]   *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

[32]   *Booth*, 532 U.S. at 741.

[33]   *Jones v. Bock*, 549 U.S. 199, 218 (2007).  *See Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010) ("[W]hether a prisoner properly exhausted a claim is made by evaluating compliance with the prison's specific grievance procedures.").

[34]   *Jones*, 549 U.S. at 212, 216–17.

[35]   *Rinaldi v United States*, 904 F.3d 257, 265 (3d Cir. 2018) (quoting *Drippe*, 604 F.3d at 781, and *Small*, 728 F.3d at 269-71).

[36]   *See* DC-ADM 804, *Inmate Grievance System*, Pa. Dep't of Corrs., *available at* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.

procedure, a prisoner must first submit a timely written grievance for review by the facility manager or regional grievance coordinator within fifteen days from the date of the incident.[37]   DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims he wishes to make concerning violations of Department directives, regulations, court orders, or other law."[38]  A response should be received within ten business days.[39]  Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days.[40]   Again, a response should be received within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee, also known as the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"), within fifteen working days, and the inmate should receive a final determination in writing within thirty days.[41]  To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process."[42]

---

[37]  *Id.*
[38]  *Id.*
[39]  *Id.*
[40]  *Id.*
[41]  *Id.  See also Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 1997), *aff'd*, 532 U.S. 731 (2001) (discussing the exhaustion process for Pennsylvania state prisoners under an older version of DC-ADM 804).
[42]  *Stroman v. Wetzel*, No. 1:16-CV-2543, 2019 WL 931653, at *3 (M.D. Pa. Feb. 26, 2019). *See also Garcia v. Kimmell*, 381 F. App'x 211, 213 n.1 (3d Cir. 2010) ("Proper exhaustion in

Here, Plaintiff filed his initial grievance in which he included a statement of facts regarding the alleged assault, identified the individuals involved in the events either by name (McCurdy, Stabley, Rogers, McHenry) or by description, such as "two heavy men (guards)," explained that he was face down during part of the assault, and stated the claim that he wished to make.  Plaintiff also requested the names of those corrections officers involved in the incident.  He then diligently exhausted all three levels of grievance review.

In support of their argument, Moving Defendants cited one unpublished case, *Victor v. Burns*,[43] from the United States District Court for the Western District of Pennsylvania.  In *Victor*, the court noted that in the grievance at issue, "plaintiff named defendant Lilley and one other officer that could be reasonably identified as defendant Burns," but held that a "passing mention of additional corrections officers" for reasons unrelated to the claim "do not suffice to assert a grievance against those officers."[44]

That factual posture is inapposite to the issue before this Court, as Plaintiff identified or described the corrections officers, explained how they were directly involved in the alleged assault against him, and asserted a claim against them; they were not mentioned in "passing."  There is no requirement in DC-ADM 804 that a

---

Pennsylvania requires completion of a three-part procedure; initial review, appeal, and final review.").

[43]   No. 17-cv-984, 2018 WL 9617254, at *1 (W.D. Pa. May 23, 2018).

[44]   *Id.*

prisoner must *name* the individuals that were involved, and it is unclear to the Court how any plaintiff could comply with such a rule within the time allowed for filing a grievance when a plaintiff does not know the names of the staff members or did not see them.  As such, the pending motion to dismiss is denied.[45]

## IV.    CONCLUSION

Based on the foregoing, the partial motion to dismiss, or, in the alternative, for summary judgment is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[45]   The Court need not determine whether the facts presented by Plaintiff would render the administrative grievance procedure unavailable in light of the Supreme Court's holding in *Ross v. Blake*.  In *Ross*, the Supreme Court held that a prisoner was excused from exhausting his or her administrative remedies when such remedies were unavailable because, for example, prison officers sought to "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  136 S. Ct. 1850, 1859-60 (2016).