## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIK BARCLAY, | No. 4:19-CV-02054 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| STABLEY, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### JANUARY 12, 2022

*Pro se* Plaintiff Erik Barclay ("Plaintiff"), who is presently incarcerated in the State Correctional Institution-Greene ("SCI-Greene") and was incarcerated in the State Correctional Institution-Rockview ("SCI-Rockview") at all relevant times, brought this case asserting that his civil rights were violated when Defendant prison officials used excessive force against him during and after a search of his cell. Defendants have moved for summary judgment. I will grant the motion in part and deny it in part.

## I.      BACKGROUND

Plaintiff initiated this case through the filing of a civil rights complaint under 42 U.S.C. § 1983 on October 18, 2019 in the Centre County Court of Common Pleas.[1] Defendants removed the case to this District on December 2, 2019.[2]

---

[1]  Doc. 1-2.
[2]  Doc. 1.

Following removal, Plaintiff moved for leave to amend his complaint on March 13, 2020.[3]  I granted the motion on March 27, 2020,[4] and Plaintiff's amended complaint was docketed on the same day.[5]

In the amended complaint, Plaintiff alleges generally that Defendants Stabley and McCurdy assaulted him during a search of his cell on May 15, 2017, that Defendants McHenry, Lee, and Kauert joined in the assault shortly after it began, that Defendant Campbell failed to intervene in the assault, and that Defendants McHenry, Phillips, and Ortiz used excessive force when they transported Plaintiff to the prison's medical unit after the alleged assault.[6] Defendants moved for dismissal of the complaint or summary judgment on the grounds that Plaintiff had failed to exhaust administrative remedies on April 2, 2020.[7]  I denied the motion on February 9, 2021.[8]  Defendants then answered the amended complaint on March 2, 2021.[9]

Following the close of discovery, Defendants filed the instant motion for summary judgment on August 4, 2021.[10]  Defendants filed a brief in support of the motion and a statement of material facts as required by Local Rule 56.1 on the

---

[3]    Doc. 10.
[4]    Doc. 12.
[5]    Doc. 13.
[6]    *Id.*
[7]    Doc. 14.
[8]    Docs. 25-26.
[9]    Doc. 27.
[10]   Doc. 37.

same day.[11]  Plaintiff filed a brief in opposition to the motion on April 8, 2021

along with a response to Defendants' statement of material facts.[12]  Although

Plaintiff's statement was titled "Statement of Material and Disputed Factual

Issues," in substance it responded directly to Defendants' statement of material

facts, including numbered paragraphs that corresponded to Defendants' numbered

paragraphs as required by Local Rule 56.1.[13]  Defendants filed a reply brief in

support of the motion for summary judgment on November 1, 2021.[14]  In the reply

brief, Defendants argue, *inter alia*, that I should disregard Plaintiff's statement of

material facts because of its purported noncompliance with Rule 56.1.[15]  Plaintiff

moved for leave to file a sur reply on November 17, 2021.[16]  I granted the motion

on November 19, 2021,[17] and Plaintiff filed a sur reply in opposition to the motion

for summary judgment on December 13, 2021.[18]  Plaintiff has additionally filed a

motion for leave to amend the title of his statement of material facts, asserting that

Defendants have taken issue only with the title of his statement and that changing

the title would resolve the issue of whether his statement should be considered by

the Court.[19]

---

[11]  Docs. 38-39.
[12]  Doc. 45.
[13]  *See id.*
[14]  Doc. 48.
[15]  *Id.* at 1-2.
[16]  Doc. 49.
[17]  Doc. 50.
[18]  Doc. 51.
[19]  Doc. 52.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[20]  "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[21]  "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[22]  "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[23]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[24]  Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on a lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-

---

[20]  Fed. R. Civ. P. 56(a).
[21]  *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).
[22]  *Clark*, 9 F.3d at 326.
[23]  *Id.*
[24]  *Anderson*, 477 U.S. at 252.

minded jury could return a verdict for the plaintiff on the evidence presented."[25]
"The mere existence of a scintilla of evidence in support of the plaintiff's position
will be insufficient; there must be evidence on which the jury could reasonably
find for the plaintiff."[26]  "The judge's inquiry, therefore unavoidably asks . . .
'whether there is [evidence] upon which a jury can properly proceed to find a
verdict for the party producing it, upon whom the onus of proof is imposed."[27]  The
evidentiary record at trial, by rule, will typically never surpass that which was
compiled during the course of discovery.

    "A party seeking summary judgment always bears the initial responsibility
of informing the district court of the basis for its motion, and identifying those
portions of the pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, which it believes demonstrate the
absence of a genuine issue of material fact."[28]  "Regardless of whether the moving
party accompanies its summary judgment motion with affidavits, the motion may,
and should, be granted so long as whatever is before the district court demonstrates
that the standard for the entry of summary judgment, as set forth in Rule 56(c), is
satisfied."[29]

---

[25] *Id.*

[26] *Id.*

[27] *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

[28] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

[29] *Id.*

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[30]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[31]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant."[32]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[33]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[34]

---

[30]  *Anderson*, 477 U.S. at 250.
[31]  Fed. R. Civ. P. 56(c)(1).
[32]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[33]  Fed. R. Civ. P. 56(e)(2).
[34]  Fed. R. Civ. P. 56(c)(3).

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[35]  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[36]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[37]

## III.   MATERIAL FACTS

Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."[38]  The non-movant must file a statement in response to the movant's statement that responds to the numbered paragraphs in the movant's statement and sets forth which paragraphs present a genuine issue of material fact.[39]  Any facts that are set forth in the movant's statement that are not contradicted by the non-movant's statement are "deemed to be admitted."[40]

In this case, Defendants filed a statement of material facts as required by Local Rule 56.1, and Plaintiff filed a document titled "Statement of Material and

---

[35] *Anderson*, 477 U.S. at 249.
[36] *Id.*
[37] *Id.* at 249-50 (internal citations omitted).
[38] M.D. Pa. L.R. 56.1.
[39] *Id.*
[40] *Id.*

Disputed Factual Issues" that is, in substance, a response to Defendants' statement of material facts.[41]

Defendants argue that Plaintiff's statement of material facts should be disregarded for its purported noncompliance with Local Rule 56.1.[42]  A review of Plaintiff's statement, however, shows that it responds to Defendants' statement of material facts in the exact manner contemplated by Local Rule 56.1.  I will, therefore, reject Defendants' argument that Plaintiff's statement should be disregarded.  Additionally, I will deny Plaintiff's motion to amend the title of his statement as moot.  The statement will be treated as a response to Defendants' statement in accordance with Local Rule 56.1, and there is accordingly no need to amend the title of the statement.  With that in mind, I turn my attention to the material facts.  I will cite directly to the parties' statements of material fact to the extent that factual assertions in the statements are undisputed or supported by uncontroverted record evidence.

At all times relevant to this case, Plaintiff was incarcerated in SCI-Rockview.[43]  On May 17, 2017, Defendants Stabley and McCurdy came into Plaintiff's cell to search him and the cell.[44]  The Defendants ordered Plaintiff to hand his clothing to them, and while he was doing this a piece of white tissue came

---

[41] *See* Docs. 39, 45.
[42] Doc. 48 at 1-2.
[43] Doc. 39 ¶ 1; Doc. 45 ¶ 1.
[44] Doc. 39 ¶ 2; Doc. 45 ¶ 2.

into view.[45]  Video evidence shows the tissue subsequently being thrown or kicked

out of the cell and landing on the floor of the hallway outside of the cell.[46]  The

parties dispute how the tissue came to be outside of the cell.  Defendants assert that

Plaintiff kicked the tissue out of the cell in an effort to hide it from the officers,

while Plaintiff disputes this account.[47]  Although the video evidence does not show

the inside of Plaintiff's cell, it confirms that the tissue was inside the cell and was

propelled outside of the cell during the search.[48]

At some point during the search, Defendant Stabley used force to take

Plaintiff down to the ground.[49]  The parties provide differing accounts of what

occurred prior to the use of force.  According to Defendants, Stabley attempted to

take Plaintiff into custody after he had kicked the tissue out of the cell, Plaintiff

resisted, and Stabley used force in response to Plaintiff's resistance.[50]  Plaintiff

asserts that he did not resist arrest and that the use of force arose from a dispute

---

[45]  Doc. 39 ¶ 3; Doc. 45 ¶ 3.  The parties dispute what exactly happened to the tissue.  Defendants assert that Plaintiff attempted to hide the tissue while he was handing his socks to Stabley and McCurdy.  Doc. 39 ¶ 3.  Plaintiff disputes this contention.  Doc. 45 ¶ 3.

[46]  *See* Doc. 39-4 – Hallway Footage at 2017-05-17, 06:54:43.  Copies of the relevant video footage were submitted to the Court by Defendants' counsel with Doc. 39-4 listed as a placeholder for the physical production.  There are two videos—one showing security footage of the hallway outside Plaintiff's cell, the other showing handheld video of officers transporting Plaintiff to the medical department.  I will cite the videos respectively as Hallway Footage and Handheld Footage, and I will use date and time stamps where appropriate, which will be cited in the manner in which they appear in the videos.

[47]  *See* Doc. 39 ¶¶ 3-4; Doc. 45 ¶¶ 3-4.

[48]  *See* Hallway Footage at 2017-05-17, 06:54:43

[49]  *See* Doc. 39 ¶ 5; Doc. 45 ¶ 5.

[50]  *See* Doc. 39 ¶ 5.

between Plaintiff and Stabley over who should pick up Plaintiff's sock.[51]
According to Plaintiff, he dropped his sock during the search, at which point
Stabley grabbed him by the neck and screamed "pick it up, pick it the fuck up!"[52]
Stabley then purportedly "body slam[med]" Plaintiff to the floor and applied
handcuffs.[53] Plaintiff suffered an injury to his right elbow as a result of Stabley's
actions.[54] Medical records following the incident characterized the injury as a
"superficial abrasion" and indicated that no other injuries were noted or reported.[55]

After Stabley's initial use of force, Defendants McCurdy, McHenry, Lee,
and Kauert entered the cell.[56] Plaintiff alleges that the Defendants used additional
force on Plaintiff after Stabley first took him to the ground.[57] According to the
allegations in Plaintiff's amended complaint, McCurdy punched and kicked
Plaintiff in the back, neck, elbows, and legs after he was already on the ground,
McHenry, Lee, and Kauert placed their feet on Plaintiff's neck and punched and
kicked Plaintiff, and McHenry "delivered two super hard kicks" to Plaintiff's right
elbow.[58] After the officers secured and handcuffed Plaintiff, they searched the

---

[51] Doc. 45 ¶ 5; Doc. 44-1 ¶ 12.
[52] Doc. 44-1 ¶ 12.
[53] *Id.*
[54] Doc. 39 ¶ 6; Doc. 45 ¶ 6.
[55] Doc. 39-2 at 5.
[56] Doc. 39 ¶ 7; Doc. 45 ¶ 7.
[57] *See* Doc. 13 ¶¶ 20-21. Defendants' statement of material facts does not address whether additional force was applied after the initial use of force by Stabley, except to note that Plaintiff "speculated" that McHenry, Lee, and Kauert assaulted him. *See* Doc. 39 ¶ 7.
[58] Doc. 13 ¶¶ 20-21.

tissue that was outside of the cell and found two pieces of sharpened aluminum.[59] The parties dispute whether Defendant Campbell was present during the use of force.[60]

Following the initial use of force, Defendants took Plaintiff into custody and Defendants McHenry, Phillips, and Ortiz escorted him to the medical department.[61] Lieutenant Wilt also assisted in escorting Plaintiff, but he is not named as a defendant.[62]  Plaintiff alleges that while they were escorting him, McHenry, Phillips, and Ortiz "were forcibly twisting his arms and shoulder's rotary cuff [sic] upward to purposefully cause injury and inflict pain."[63]  Footage of the officers escorting Plaintiff is captured on video by a handheld camera that Ortiz operated.[64]

## IV.   ANALYSIS

Plaintiff's constitutional claims are brought under 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

---

[59]  Doc. 39-1 at 14, 18.
[60]  Doc. 39 ¶ 10; Doc. 45 ¶ 10.
[61]  *See* Doc. 39-1 at 16.
[62]  *See id.*; Doc. 13.
[63]  Doc. 13 ¶ 24.
[64]  Doc. 39 ¶¶ 11-12; Doc. 45 ¶¶ 11-12; *see also* Handheld Footage.

42 U.S.C. § 1983.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[65]  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[66]

Plaintiff's claims in this case sound in excessive force in violation of the Eighth Amendment.  The Eighth Amendment "protects convicted prisoners from any force applied 'maliciously and sadistically for the very purpose of causing harm.'"[67]  Thus, the question a court must answer in considering an excessive force case is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[68]  Courts must consider several factors in conducting this analysis, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis

---

[65] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

[66] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

[67] *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193 (3d Cir. 2021) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

[68] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

of facts known to them; and (5) any efforts made to temper the severity of the forceful response.[69]

Excessive force "may constitute cruel and unusual punishment even when the inmate does not suffer serious injury."[70]  Injury and force "are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[71]

Defendants in this case raise four arguments for summary judgment as to Plaintiff's Eighth Amendment excessive force claims.  First, they argue that Defendants Stabley, McHenry, McCurdy, Lee, and Kauert are entitled to summary judgment because the force used was reasonable in proportion to the threat posed by Plaintiff.[72]  Second, they argue that Plaintiff has not established the personal involvement of Defendants McHenry, Lee, and Kauert in the alleged assault.[73] Third, they argue that Defendant Campbell is entitled to summary judgment because the claim against him is based on his alleged failure to intervene, but he did not have a reasonable opportunity to intervene in the alleged assault.[74]  Finally, Defendants argue that McHenry, Phillips, and Ortiz are entitled to summary

---

[69]  *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (quoting *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).

[70]  *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (internal alterations omitted) (quoting *Hudson*, 503 U.S. at 7).

[71]  *Id.* at 38.

[72]  Doc. 38 at 3-5.

[73]  *Id.* at 5-6.

[74]  *Id.* at 6-8.

13

judgment for the claims arising from the transporting of Plaintiff to the medical department because the force they used was reasonable and because they are entitled to qualified immunity.  I will analyze these arguments *seriatim*.

## A. The Initial Use of Force

I will first address Defendants' summary judgment argument arising from the initial use of force in Plaintiff's cell.  Defendants argue that they are entitled to summary judgment because the use of force was reasonable in proportion to the threat posed by Plaintiff.

Having reviewed the parties' arguments and the facts of record, I will deny summary judgment with respect to the use of force inside Plaintiff's cell because there are several genuine issues of material fact as to whether the use of force was reasonable.  Most notably, the amount of force that Defendants used is still in dispute.  It is undisputed that Defendant Stabley took Plaintiff down to the ground, but it is not clear from the record before the Court what additional force, if any, was used after this happened.  Plaintiff alleges in his amended complaint that Defendants punched and kicked him several times after he was on the ground,[75] and Defendants' statement of material facts does not address whether these punches and kicks actually happened except to say that Plaintiff "speculated" that they did.[76]

---

[75] *See* Doc. 13 ¶¶ 20-21.
[76] *See* Doc. 39 ¶ 7.

There is also a question of fact as to whether the use of force was justified, and, if so, how much force was justified.  Although it is undisputed that two sharpened pieces of aluminum were found in the tissue outside of Plaintiff's cell after the use of force, the record indicates that Defendants did not know the aluminum pieces were there when they began the use of force.[77]  Whether the use of force in a particular instance is reasonable must be based on what the officers knew and perceived at the time of the incident and not what was discovered after the fact.[78]  Here, it appears that the officers knew only that Plaintiff was in possession of a white tissue; they did not know at the time that the tissue contained sharpened pieces of aluminum.  Moreover, it is undisputed that the tissue was outside of the cell and not within Plaintiff's reach at the time Defendants began the use of force.  Whether these facts presented such a clear risk to Defendants to justify the use of force is a question of fact that cannot be determined at the summary judgment stage.

Finally, there is a question of fact as to whether Plaintiff was resisting the Defendants before and during the use of force.  The parties provide differing accounts as to whether Plaintiff was resisting when Defendant Stabley first took him to the ground.[79]  Defendants' statement of material facts is also silent as to

---

[77] *See* Doc. 39-1 at 14, 18.

[78] *Kingsley v. Hendrick*, 576 U.S. 389, 397 (2015); *Graham v. Connor*, 490 U.S. 386, 396 (1989).

[79] *See* Doc. 39 ¶ 5; Doc. 45 ¶ 5; Doc. 44-1 ¶ 12.

whether Defendants used additional force after Plaintiff was on the ground and, by extension, whether Plaintiff was resisting during that time.

## B.    Personal Involvement

I will next consider the argument that Plaintiff has not established the personal involvement of Defendants McHenry, Lee, and Kauert.  A defendant cannot be liable for a violation of a plaintiff's civil rights unless the defendant was personally involved in the violation.[80]  In a case of alleged excessive force, a defendant cannot be held liable merely because he was in the "immediate vicinity of where excessive force occurred."[81]  Rather, a plaintiff must establish that the defendant participated in the alleged excessive force through his own actions.[82]

Defendants argue that Plaintiff cannot establish the personal involvement of McHenry, Lee, and Kauert because, by Plaintiff's own admission, he could not see which officers were striking him during the alleged assault.[83]  Defendants argue that this case is analogous to *Jutrowski v. Township of Riverdale*,[84] where the Third Circuit held that four police officer defendants were entitled to summary judgment

---

[80]  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018).
[81]  *Id.* at 289.
[82]  *Id.*
[83]  *See* Doc. 38 at 5-6; *see also* Plaintiff's Deposition at 16, Doc. 39-3 at 18 (acknowledging that he could not see which defendants were kicking him and stating "I only pieced it together after I was escorted out of the cell judging by who had my left arm and who had my right arm").
[84]  904 F.3d at 280.

in an excessive force case based on plaintiff's failure to establish their personal involvement in the alleged excessive force.[85]

The facts of *Jutrowski* arose from a one-car accident that occurred when the plaintiff was driving under the influence of alcohol and crashed his vehicle along the shoulder of a highway.[86]  Five police officers responded to the scene, including the four who were subsequently named as defendants.[87]  While the officers were there, the plaintiff exited his vehicle and stood in close proximity to passing traffic.[88]  One of the officers, observing that the plaintiff was unsteady on his feet and becoming concerned for the plaintiff's safety, reached out for the plaintiff's right wrist to steady him.[89]  The plaintiff reacted by pulling his hand away, which led him to strike the officer in the forehead.[90]  The officer then performed a "front leg sweep" and took plaintiff down to the ground.[91]  The officers attempted to handcuff the plaintiff while he was lying on the ground, and while he was in this position "one of the officers kicked Jutrowski hard on the right side of his face, hard enough to inflict a 'blow out fracture,' that is, a broken nose and broken eye socket, requiring surgery."[92]  The plaintiff brought suit against the four officers

---

85   *Id.* at 289.
86   *Id.* at 285.
87   *Id.*
88   *Id.* at 286.
89   *Id.*
90   *Id.*
91   *Id.*
92   *Id.*

who were in the immediate vicinity when the kick occurred, though he was unsure which of the defendants had committed the act.[93]  Discovery in the case did not reveal which of the defendants had kicked plaintiff, and none of the defendants admitted to doing so.[94]  The district court granted summary judgment to the defendants, concluding that the plaintiff had not established the personal involvement of the defendants because the facts indicated that only one of the officers had kicked him and he had not produced any evidence that could conclusively determine which of the officers had performed the act.[95]  The Third Circuit affirmed, stating that it was "simply not the law" that a plaintiff could "haul before a jury all officers who were 'in the immediate vicinity of where excessive force occurred' without any proof of their personal involvement."[96]  Absent evidence as to *which* individual defendant kicked the plaintiff, the court held, summary judgment was appropriate.[97]

In conducting its analysis, the Third Circuit contrasted the facts of the case with an earlier Third Circuit case, *Smith v. Mensinger*,[98] where a prisoner plaintiff brought suit against five correctional officer defendants who had allegedly

---

[93]  *Id.* at 286-87.
[94]  *Id.* at 287.
[95]  *Id.* at 288.
[96]  *Id.* at 289.
[97]  *Id.* at 291-92.
[98]  293 F.3d at 641.

assaulted the plaintiff.[99]  The defendants in *Smith* sought summary judgment on the

grounds that the plaintiff had failed to establish their personal involvement, but the

Third Circuit rejected this argument, holding that the plaintiff had sufficiently

shown their personal involvement through allegations and testimony that *all* of the

officers had participated in the assault.[100]  Thus, where the factual dispute is about

"the extent of each officer's participation," as in *Smith*, summary judgment based

on a lack of personal involvement is not appropriate, but where the dispute is about

"the *possibility* of each officer's participation," as in *Jutrowski*, summary judgment

is appropriate.[101]

Defendants argue that the present case is analogous to *Jutrowski* and that

Plaintiff is attempting to hold them liable merely because they were in the

immediate vicinity where excessive force allegedly occurred.[102]

I disagree.  The facts of this case are legally indistinguishable from *Smith*,

where the Third Circuit held that summary judgment based on lack of personal

involvement was not warranted.  Like the plaintiff in *Smith*, Plaintiff alleges that he

was assaulted by several corrections officers at once, all of whom allegedly

participated in the assault.[103]  Also like the plaintiff in *Smith*, Plaintiff

---

[99]  *Jutrowski*, 904 F.3d at 290-91 (citing *Smith*, 293 F.3d at 650).

[100]  *Smith*, 293 F.3d at 650.

[101]  *Jutrowski*, 904 F.3d at 291 (cleaned up) (citing *Smith*, 293 F.3d at 650).

[102]  Doc. 38 at 5-6.

[103]  *See* Doc. 13 ¶ 21 ("[D]efendants McHenry, Lee, [and] Kauert entered the cell, and placed their feet on Barclay's neck and ankle applying all of the pressure of their body weight on this body

acknowledges that he could not see what each officer was doing during the alleged assault,[104] but "the fact that [Plaintiff] has acknowledged that he could not see those defendants during the beating neither negates their involvement nor their liability as a matter of law."[105]  Plaintiff has alleged and testified that *all* of the Defendants who were allegedly present in the cell—Stabley, McHenry, McCurdy, Lee, and Kauert—participated in the assault, which is sufficient to create a genuine issue of material fact and defeat Defendants' summary judgment argument.[106]

## C.    Failure to Intervene

Defendants next argue that Defendant Campbell is entitled to summary judgment because the claims against him are predicated on an alleged failure to intervene that is not properly pleaded in the amended complaint and because he lacked a meaningful opportunity to intervene even if he had been present.[107]

Defendants' argument that Plaintiff fails to plead Campbell's failure to intervene is plainly belied by Plaintiff's amended complaint.  The amended complaint alleges that:

> Defendant Campbell is liable for his personal involvement of engaging in violating Barclay's civil rights of being free from the cruel and unusual punishment of excessive force under the Eighth Amendment of the U.S. Constitution when he watche[d] defendant[s] enter[] the cell

---

parts and began punching and kicking Barclay.  Defendant McHenry delivered two super hard kicks to Barclay's right elbow.")
[104]  Doc. 39-3 at 18.
[105]  *Smith*, 293 F.3d at 650.
[106]  *See id.*; *Jutrowski*, 904 F.3d at 290-91.
[107]  Doc. 38 at 6-8.

and began punching and kicking Barclay in the back, neck, elbows, and legs areas [sic] while he was completely restrained.  Allowing them to violate Barclay.[108]

Defendants' argument that Campbell did not have a realistic opportunity to intervene also fails.  Although it is true that a defendant can only be held liable for failing to intervene in an assault "if there is a realistic and reasonable opportunity to intervene,"[109] the record of this case is not sufficiently clear for the Court to conclude as a matter of law that Campbell could not have intervened.  Video evidence depicts multiple officers standing and watching the events inside the cell for approximately thirty seconds from the time that Defendants McHenry, Lee, and Kauert entered the cell to the time that the Defendants began to leave to cell.[110]  Because none of the parties have identified the observing officers, the Court must draw the reasonable inference that one of them is Campbell.[111]

I cannot say as a matter of law that Campbell did not have a realistic and reasonable opportunity to intervene in the alleged assault in the thirty seconds that he stood and observed.  Accordingly, Campbell is not entitled to summary judgment.

---

[108]  Doc. 13 ¶ 36.

[109]  *Smith*, 293 F.3d at 651.

[110]  *See* Hallway Footage at 2017-05-17, 06:55:00–06:55:30.

[111]  *See Scott v. Harris*, 550 U.S. 378 (2007) (noting that courts reviewing motions for summary judgment must view evidence and draw reasonable inferences in the light most favorable to the nonmoving party).

### D.     Use of Force During Transportation

Finally, Defendants argue that summary judgment should be granted to the extent that Plaintiff claims Defendants used excessive force while transporting him to the medical unit because the video evidence blatantly contradicts Plaintiff's version of events.[112]

I agree.  In his amended complaint, Plaintiff alleges that Defendants forcibly twisted his arm and rotator cuff to cause him injury while they were walking to the medical department.[113]  Video evidence, however, glaringly contradicts this account, as it does not show any instance in which Defendants forcibly twisted Plaintiff's arms or otherwise applied excessive force while transporting him to the hospital.[114]

Although courts reviewing motions for summary judgment are required to view evidence and draw reasonable inferences in the light most favorable to the non-moving party, they are not required to adopt the non-movant's version of events when it is "blatantly contradicted by the record."[115]  Thus, where the non-moving party's version of evidence is "utterly discredited" by video evidence, the court should view the facts in the light depicted by the video evidence.[116]

---

[112] Doc. 38 at 8-9.
[113] *See* Doc. Doc. 13 ¶ 24.
[114] *See* Handheld Footage at 00:32-08:20.
[115] *Scott*, 550 U.S. at 380.
[116] *Id.*

In this case, the only instance depicted in the video evidence that could be characterized as force is an approximately thirteen-second period when one of the officers briefly lifts up Plaintiff's hand and then the officer puts his hand under Plaintiff's arm.[117]   At best, this portion of the video depicts *de minimis* force that is not sufficient to support an Eighth Amendment claim.   Accordingly, I will grant summary judgment to the extent that Plaintiff complains of excessive force while Defendants were transporting him to the prison's medical unit.   Because Defendants Phillips and Ortiz are only named as Defendants with respect to this claim, I will dismiss them from the case.

## V.   CONCLUSION

For the foregoing reasons, I will grant Defendants' motion for summary judgment in part and deny it in part.   Summary judgment will be granted to the extent Plaintiff complains of excessive force while Defendants were transporting him to the prison's medical unit but denied in all other respects.   I will also deny as moot Plaintiff's motion to amend the title of his statement of material facts.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[117]  *See id.* at 00:52-01:05.